IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IRA SVENDSGAARD AND ASSOC., INC., | ) | CASE NO.: 1:20 CV 328 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| ALLFASTENERS USA, LLC, | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) For Failure to State a Claim. (ECF # 8,12). Plaintiffs filed a Brief in Opposition to Defendants motion, and Defendants filed a Reply in Support of their position. (ECF #23,25, 28). Subsequently, Plaintiff filed a Response to Defendant's Reply, as well as a Supplemental Response to the Reply. (ECF #36, 55). Defendant filed a Reply in response to Plaintiff's Supplement. (ECF #56). After careful consideration of the briefs and relevant law, and a review of the relevant filings and proceedings in the corresponding state action, this Court finds that Defendant's Motion should be DENIED at this time.

## BACKGROUND[1]

Defendant AllFasteners USA, LLC ("AllFasteners") sells a line of products, the NexGen2 products, that include a blind bolt assembly product incorporating a spring and a sleeve. In 2015, AllFasteners was sued by ACME Operations, an Australian Company doing business in the USA as Ajax Engineered Fasteners ("AJAX"). The Complaint alleged that ACME Operations manufactured and sold fasteners, including specialty high capacity blind bolt fasteners used in the construction of cell towers, wind turbine towers, and other steel structures. The fasteners at issue were part of a product group named Oneside structural fasteners and these products incorporated the inventions in U.S. Patent Number 7,373,709 ("the '709 Patent"), and were protected by that patent.[2] The Complaint also alleged that the NexGen2 blind bolt assembly infringed upon the U.S. Patent Number 7,373,709 ("the '709 Patent").

ACME (dba AJAX) claimed that they had been authorized by the owner of the patent, ACME Engineered Holding Pty. Ltd., to enforce the patent against AllFasteners. The Complaint alleged that AllFasteners had been an authorized re-seller of the Oneside products; that it used information gained through this re-seller relationship to create its own competing products, the NexGen2 products; and, that in doing so, it infringed the '709 Patent and committed other

---

[1] The facts set forth in this section are taken either from facts agreed upon by the parties, public records from prior litigation. Any facts not already agreed upon or established in a prior proceeding are taken from the Plaintiff's Complaint and are accepted as true for purposes of this opinion only.

[2] Plaintiff in this case, Ira Svendsgaard and Associates, Inc., was originally the sole distributor of the OneSide blind bolt. Subsequently Defendant, AllFasteners became a second distributor for the product. (ECF #49-1).

violations of the intellectual property laws. This patent claim, within the original Complaint, was eventually dismissed without prejudice for lack of standing because, at the time of filing, the Plaintiff, ACME Operations (dba AJax), did not actually own the '709 Patent nor did it have a valid exclusive license to enforce the patent. (*Specific Fasteners Pty Ltd. v. AllFasteners USA LLC*, Case No. 1:15 CV 1366, at 3-6 (N.D. Ohio, May 12, 2016). Claims under the Lanham Act and for Misappropriation remained intact.

In December of 2015, AllFasteners applied for a patent for its NexGen2 device. The patent was issued as U.S. Patent 10,018,212 ("the '212 Patent") on July 10, 2018.

In 2016, ACME Operations (dba "AJAX") filed a second lawsuit, alleging that the NexGen1 and NexGen2 products infringed on the '709 Patent. (*ACME Operations Pty., Ltd. v. AllFasteners USA, LLC*, Case No. 1:16 CF 2134 (N.D. Ohio, August 25, 2016). This lawsuit alleged that ACME Operations now owned the '709 Patent by means of an assignment registered with the USPTO, and therefore had standing to sue. Although the court docket does not show that this case was officially consolidated with 1:15 CR 1366, it was transferred to the same judge as a related case, the parties agreed that consolidation was appropriate, and the cases do appear to have been mediated jointly.

In April of 2017, the parties to the above cases entered into a Confidential Settlement Agreement resolving both the 1366 and 2134 cases. The written settlement agreement included a covenant not to sue in which ACME agreed "that they will not bring any action or proceeding in any court. . . asserting therein any claims referring or relating to the NexGen1 and NexGen2 devices which could have been asserted and/or included" in those prior litigations. The written agreement also indicated that settlement was further memorialized in a meeting between the

parties and the mediators and that there was a transcript of those proceedings. In the transcript the scope of ACME's covenant not to sue is described as "anything having to do with the production by AllFasteners, production, design or development or use of products that it characterizes as NexGeneration1 and NexGeneration 2." (ECF #12-8, at 7-8). The parties clarified that the covenant not to sue would extend to alleged infringement under sections(b) and (c) of 28 U.S.C. §271, which expand infringement to include inducement of infringement and sale of infringing products. (Id. at 10). The parties agreed to the mediator's characterization of the scope of the covenant which he described as "anything having to do with NexGen1 or NexGen2 that either is asserted in this case or could have been asserted in this case."[3]

Further ACME released "any and all claims and/or causes of action which they could have as of the Effective Date hereof with respect to the subject matter of [the litigations], including but not limited to any claims and/or causes of action which were known or unknown, asserted or could have been asserted, in any manner whatsoever in the [litigations] or otherwise without limitation." (ECF #12, Ex. 1, at 2). The written agreement also contained a clause by which AllFasteners release ACME and the other Plaintiffs in the litigation from any and all claims and/or causes of action relating to the litigation which were known or unknown and could have been asserted in that litigation. (Id.) In 2018 AllFasteners sued ACME, as well as Ira

---

[3] AllFasteners' arguments in this case assume that this covenant not to sue extends to all future production, sales, or other potentially infringing actions involving the NexGen2 product line. Although the language of the written agreement and the transcribed agreement do not unequivocally address AllFasteners future conduct relative to the NexGen2 products, nor make any determination as to whether the NexGen2 products actual infringe the '709 Patent, ISA does not challenge this assumption, and the Court will therefore accept this premise for purposes of this opinion.

Svendsgaard and Associates, Inc. ("ISA") for patent infringement, alleging that the manufacture and sale of the Oneside fasteners violated AllFasteners' '212 Patent. That case remains pending in the Central District of California.[4] After that case was filed, ISA purchased the '709 Patent in 2019 through a public liquidation sale held in connection with ACME's voluntary liquidation under Australian law. ISA recorded its acquisition of the ownership rights at the USPTO, on or about October 2, 2019. On February 14, 2020, ISA filed the instant action against AllFasteners alleging that the NexGen2 products infringe upon the '709 Patent, which it now owns.

## **LEGAL STANDARD**

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is generally limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account without converting the motion to one for summary judgment. *See Gavitt v. Born, 835 F.3d 623, 640 (6th Cir. 2016).* Relevant to this action, the Court may take judicial notice of the United States Patent and Trademark Office's public records, as well as filings and settlement agreements from prior litigations. Affirmative defenses may be determined on a motion to dismiss for failure to state a claim if the facts establishing the defense are ascertainable from the complaint and other documentation reviewable under Fed. R. Civ. P. 12(b)(6). Thus, under appropriate circumstances, a court may properly determine whether claims are barred by a prior settlement

---

[4] On summary judgment, the California court found that ISA infringed claims 1 and 2 of the '212 Patent. It also, however, found that ISA's unenforceability defenses could not be decided on summary judgment.

agreement on a motion to dismiss. *See, e.g,. Gen. Mills, Inc. v. Kraft Foods, Glob, Inc.*, 487 F.3d 1368, 1375 (Fed. Cir. 2007).

In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp 971, 975 (S.D. Ohio 1993). The Complaint must contain "sufficient matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This Court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41 (1980). In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## ANALYSIS

Defendants argue that ISA's infringement claim should be dismissed for failure to state a claim because, as an assignee of ACME Operations, it is bound by a covenant not to sue in a prior settlement agreement between ACME Operations and AllFasteners and/or because claim

preclusion bars the action. ISA counters that it cannot be bound by the settlement agreement because it was not a party to the agreement, and there are questions of fact as to whether all of the elements of claim preclusion have been met.

A. <u>Settlement Agreement</u>

According to the Complaint, ISA is the assignee of the '709 Patent, and the assignment of record is recorded in the United States Patent Office. (ECF #1, ¶ 17). Whether that assignment came directly from ACME or whether is passed first to the administrators of ACME's insolvency proceedings and then to ISA, a patent assignment "cannot transfer an interest greater than that which it possesses." *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008); *see also, TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009). As a matter of law, "an assignee takes a patent subject to the legal encumbrances thereon." *Datatreasury at 1372*.[5] The assignment of rights, through a sale or otherwise, changes the owner of the attendant rights, but cannot expand those rights. *See, Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1333 (Fed. Cir. 2009). More specifically, the assignee of a patent is bound by authorizations issued by the prior patent owner, including

---

[5]

Although ISA's purchase agreement states that Australian law applies to the agreement, "the effect of a transfer of title to a U.S. patent on the rights of an existing license to the patent is governed by U.S. patent law, even if the underlying license agreement is governed by foreign law." *In re Nortel Networks, Inc.*, 532 B.R. 494, 547 (Bankr. D. Del. 2015). More specifically, the question of whether a mutual release or covenant not to sue affects an assignees patent rights is "an issue unique to patent law" and "governed by United States federal law." *Innovus Prime, LLC v. Panasonic Corp. & Panasonic Corp. of N. Am. Inc.*, 2013 U.S. Dist. LEXIS 93820, at *9 (N.D. Cal. July 2, 2013)(citing *Sky Techs.* v. SAP AG, 576 F.3d 1374, 1379 (Fed. Cir. 2009)). Therefore, any contractual language in the assignment agreement which purports to disclaim encumbrances cannot override U.S. patent law, which makes clear that assignments are subject to limitations imposed by an existing license or covenant not to sue.

licenses, and covenants not to sue.[6] *See, e.g., In Re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1052 (9th Cir. 2001); *V-Formation, Inc. v. Benetton Grp., SpA*, 2006 U.S. Dist. LEXIS 13352, at *27 (D. Colo. Mar. 10, 2006). This is true even if the assignee is not aware of the prior authorization. *See., e.g., V-Formation* at *7 (holding that the bona fide purchaser protections do not apply in this context); *Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, 2010 U.S. Dist. LEXIS 6819, at *23 (D. Conn. Jan. 14, 2010).

There is no dispute that ISA is the assignee of the '709 Patent, and there is no dispute that prior to the assignment, the patent become subject to a covenant not to sue All Fasteners. Therefore, as a matter of law, ISA's rights in the '709 Patent are limited by the terms of the covenant not to sue contained in the settlement agreement between AllFasteners and ACME.[7]

---

[6] A license and a covenant not to sue are equivalent in purpose and legal effect; both constitute a representation that the owner consents to its use of the patent to the extent described in the agreement. *See, TransCore*, 526 F.3d at 1274; *accord, De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S 236, 241-42 (1927).

[7] The California court's decision on summary judgment does not contradict this holding. In the California case, ISA was attempting to use the mutual release section of the prior settlement agreement as a defense to AllFasteners claims that ISA is infringing the '212 Patent. The settlement agreement, as a whole, is a contract, and is bound by the general principles of contract law, which the California court applied. The mutual release clauses are also contractual agreements to be enforced as part of the larger contract, and AllFasteners has not assigned any of its rights under the '212 Patent. As set forth above in footnote 5, however, covenants not to sue, when applied to assigned patent rights operate are subject to the more specific principles of U.S. patent law. Further, the California court read the contract as limiting only claims that arose on or before the "effective date," April 4, 2017. The patent AllFasteners was suing to enforce issued on July 10, 2018. Therefore, the claims AllFasteners brought against ISA under the '212 Patent necessarily arose after the effective date of the settlement between ACME and AllFasteners. Further, the California court's statement that ISA "as not a party to the 2017 Settlement Agreement" and has not "identified anything in the 2017 Settlement Agreement or related court proceedings that would otherwise release it from any claims," does not affect this Court's analysis. (ECF #49-1 at 14). The statement is dicta, and is specifically based on ISA's

This does not necessarily make this case dismissable, however. Though ISA is subject to the terms of the covenant not to sue, there remain questions of fact as to the scope of that covenant, and whether it operates to bar some or all of the claims articulated in the Plaintiff's Complaint. These determinations would be better addressed following a period of discovery, either at the summary judgment stage or at trial.

B.  Claim Preclusion

The Sixth Circuit test for claim preclusion has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and, (4) an identity of the causes of action. *Polymer Indus. Prods. Co. V. Bridgestone/Firestone*, 211 F.R.D. 312, 318 (N.D. Ohio 2002). In patent infringement cases, the third and fourth elements are decided as a matter of Federal Circuit law. *Senju Pharm. Co. Ltd. v. Apotex, Inc.*, 746 F.3d 1344, 1348 (Fed. Cir. 2014). In the patent context, these two elements are satisfied if the same patent is involved in both suits, and the accused products are the same or essentially the same. *Id.* at 1349.

Although the relevant prior cases made no determination as to the validity of the plaintiff's infringement claims, the case was settled and dismissed with prejudice. A dismissal with prejudice, pursuant to a settlement agreement, constitutes a final decision on the merits for purposes of claim preclusion. *Migliori v. Honeywell, Inc.*, 2017 U.S. App. LEXIS 20396, at *8 (6th Cir. Oct. 16, 2017); *see also*, *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1473 (Fed. Cir. 1989) (when a "patentee dismiss[es] his claim with prejudice in a stipulated judgment, such a

---

failure to point out any alternative argument on its own behalf.

judgment operates as an adverse adjudication on the merits of a claim."). Further, the Defendant in both cases is the same, and the Plaintiff in this case is the assignee of the '709 Patent, and therefore, for all relevant purposes, stands in privity with the Plaintiff(s) in the first set of cases. *See, Foster v. Hallco Manufacturing Co.*, 947 F.2d 469, 479-480 (Fed. Cir. 1991).

With regard to the patent-specific elements, there is no dispute that the same patent is involved in both suits. This leaves only the question of whether the accused products are the same or essentially the same as those accused in the prior litigations. The Defendant asserts that the accused products in this case are the essentially the same as those previously accused. Plaintiffs have challenged this assertion. The determination of this question is fact specific and cannot appropriately be decided on a motion to dismiss.

## CONCLUSION

For the reasons set forth above Defendant's Motion to Dismiss is DENIED. The new discovery deadline in February 1, 2022. Status remains set for December 1, 2021 at 9:00 a.m.. IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: October 1, 2021